# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EMC CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>JAMES PETTER,<br><br>Defendant. | CIVIL ACTION<br><br>NO. 15-40036-TSH |

## ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR STAY THE ACTION (Docket No. 11)

**May 13, 2015**

**HILLMAN, D.J.**

Plaintiff EMC Corporation ("Plaintiff" or "EMC") asserts claims against Defendant James Petter ("Defendant") arising out of the alleged scheme of a business competitor, Pure Storage, Inc., ("Pure Storage") to collude with former EMC employees to misappropriate confidential EMC information and trade secrets. On January 15, 2015, Defendant announced that he was resigning from his position with EMC Europe Ltd. ("EMC Europe"), a subsidiary of EMC, to work for Pure Storage. Plaintiff seeks declaratory relief and damages under the EMC Corporation Amended and Restated 2003 Stock Plan ("Stock Plan") and Restricted Stock Unit Agreement ("RSU Agreement"), entered into by the parties during Defendant's employment with EMC Europe.

Specifically, the Amended Complaint (Docket No. 8) asserts claims for declaratory judgment regarding the vesting of Restricted Stock Units (Count One), declaratory judgment regarding detrimental activity and rescission of vested Restricted Stock Units (Count Two),

1

attorney's fees and costs (Count Three), declaratory judgment regarding jurisdiction (Count Four), breach of contract (Count Five), and breach of the covenant of good faith and fair dealing (Count Six). Defendant has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (Docket No. 11). Defendant alternatively requests that this case be dismissed under the doctrine of *forum non conveniens*, or stayed pending the outcome of parallel litigation in the United Kingdom. For the following reasons, Defendant's motion is **_denied_**. Summary judgment on Count Four is **_granted_**.

## Background and Jurisdictional Facts

Plaintiff EMC is a Massachusetts corporation with its principal place of business in Massachusetts, and offices and facilities throughout the District of Massachusetts. Defendant resides in Surrey, England, and worked in London during his employment with EMC Europe. *See* Petter Decl., Docket No. 13, ¶ 8. At the time of his resignation from EMC Europe, he was Senior Vice President and Managing Director for the United Kingdom and Ireland. *Id.* at ¶ 5. As part of Defendant's compensation, EMC periodically awarded him shares of EMC stock, or "Restricted Stock Units" (RSUs). To receive RSUs, Defendant was required to agree to the terms of the RSU Agreement, which he would electronically accept from his office in London. *Id.* at ¶ 16-18. On multiple occasions Defendant also signed hard copies of the RSU Agreement and mailed them to EMC's stock administration director in Hopkinton, Massachusetts. *See* Grace Decl., Docket No. 21, ¶ 8. The RSU Agreement expressly incorporates the terms of the Stock Plan, stating that an award "is made pursuant to and is subject to the provisions of this Restricted Stock Unit Agreement and the Company's Amended and Restated 2003 Stock Plan." RSU Agreement, Grace Decl., Docket No. 21, Ex. C. The Stock Plan, in turn, includes the following forum selection and choice-of-law clause:

2

> **13. Jurisdiction and Governing Law.**
> The parties submit to the exclusive jurisdiction and venue of the federal or state courts of The Commonwealth of Massachusetts to resolve issues that may arise out of or relate to the Plan or the same subject matter. The Plan shall be governed by the laws of The Commonwealth of Massachusetts, excluding its conflicts or choice of law rules or principles that might otherwise refer construction or interpretation of this Plan to the substantive law of another jurisdiction.

Stock Plan, Docket No. 8, Ex. A, ¶ 13. The Stock Plan also includes a provision allowing EMC to cancel or rescind RSU awards where senior employees engage in "detrimental activity" as defined in the plan. *Id.* at ¶ 6.7. It is this provision that EMC relies upon in seeking to void Defendant's RSV awards.

Beginning in 2009, Defendant traveled annually to Massachusetts once per year for an EMC Leadership Summit. *See* Petter Decl., Docket No. 13, ¶ 14. On January 10, 2015, Defendant traveled to Boston for the 2015 Leadership Summit. *Id.* at ¶ 20. At the time of the 2015 summit, Defendant had received an informal offer of employment from Pure Storage. *Id.* at ¶ 22. Defendant accepted the offer on January 12, 2015, once he had returned to the United Kingdom. *Id.* EMC alleges that the Leadership Summit was a confidential conference and that Defendant's attendance, after having received an offer from Pure Storage, was "detrimental activity" under the Stock Plan. *See* Pl.'s Am. Compl., Docket No. 8, ¶ 62-63. Due to this and other conduct, EMC rescinded 8,721 vested RSUs that had been awarded to Defendant.

EMC filed this action on February 27, 2015. Two weeks later, Defendant filed suit against EMC and EMC Europe in the High Court of Justice, Queen's Bench Division, in London, England ("the U.K. action"). Defendant's U.K. action seeks declarations that certain provisions of the Stock Plan are unenforceable, that he has not engaged in detrimental activity under the Stock Plan, and that EMC's rescission of the RSU awards was void.

## Analysis

Defendant's motion to dismiss asserts that the Stock Plan's forum selection clause is unenforceable and that Defendant lacks sufficient contacts with Massachusetts for this Court to exercise personal jurisdiction. Defendant alternatively argues that this Court should dismiss this case in favor of the U.K. action under the doctrine of *forum non conviens*, or stay the litigation pending the outcome in the U.K. action. The Court disagrees.

### *Forum Selection Clause*

As a threshold matter, Defendant has filed a declaration asserting jurisdictional facts in support of his motion to dismiss under 12(b)(2), as well as facts relevant to the 12(b)(6) analysis of the enforceability of the forum selection clause. *See* Petter Decl., Docket No. 13, ¶ 17. With respect to the enforceability of the forum selection clause, Defendant's affidavit presents matters outside the pleadings. Because Plaintiff had a reasonable opportunity to present an opposing affidavit, *see* Grace Decl., Docket No. 21, no further discovery on Count Four is necessary and the Court will not exclude the extraneous material related to the forum selection clause. Therefore, to the extent that Defendant moves to dismiss Count Four under 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See Noel v. Walt Disney Parks and Resorts U.S., Inc.*, CV No. 10-40071-FDS, 2011 WL 6258334 (D. Mass. 2011); *Rivera v. Centro Medico De Turabo, Inc.*, 575 F.3d 10, 16 n.3 (1st. Cir. 2009).

"It is well established that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Rivera*, 575 F.3d at 18 (internal quotations omitted). By its terms, the forum selection clause in the Stock Plan is mandatory, *see* Stock Plan, Docket No. 8, Ex. A, ¶ 13 (stating that the parties submit to the "exclusive jurisdiction and venue of the federal or state

4

courts of the Commonwealth of Massachusetts"), and covers all six counts of the Amended Complaint. *See id.* (stating that the clause applies to claims that "arise out of or relate to the Stock Plan or the same subject matter"); *see also Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 21 (1st Cir. 2011) (describing threshold issues of forum selection clause analysis).

In the face of the provision's plain language, Defendant does not carry his "heavy burden of demonstrating why the clause should not be enforced." *Huffington*, 637 F.3d at 21 (internal quotations omitted). In determining the enforceability of forum selection clauses, both Massachusetts and federal common law apply the standard described by the Supreme Court in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1972).[1] *See id.* at 23. Under *Bremen*, "the forum selection clause should control absent a strong showing" that:

> (1) the clause was the product of fraud or overreaching; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; or (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

*Id.* (internal citations and alterations omitted). There is no contention that the clause was the product of fraud or overreaching, and enforcement of the clause would not be unreasonable or unjust. Defendant was free to decline the RSUs. Instead, he proactively agreed to the terms of the Stock Plan, including the forum selection clause, by accepting the RSU Agreements electronically. Such "clickwrap" agreements are commonly enforced in Massachusetts and Federal Courts. *See, e.g.*, *Ajemian v. Yahoo!*, 83 Mass. App. Ct. 565, 576, 987 N.E.2d 604 (2013) (noting that "forum selection clauses have almost uniformly been enforced in clickwrap

---

[1] The Supreme Court has not stated whether enforcement of a forum selection law is substantive (requiring the application of state law) or procedural (requiring the application of federal common law). *See Huffington*, 637 F.3d at 21. The parties agree that this question is immaterial because both Massachusetts and federal common law use the same standard when evaluating the enforceability of a forum selection clause.

agreements"); *Bagg v. HighBeam Research, Inc.*, 862 F. Supp. 2d 41, 45 (D. Mass. 2012). Defendant also signed hard copies of the RSU Agreements and mailed them to EMC's stock administration director in Massachusetts.

To be sure, this litigation will be less convenient for Defendant than the U.K. action. But he cannot show that it will be so gravely difficult and inconvenient that he will effectively be deprived of his day in court. Defendant is no stranger to traveling to Massachusetts for professional purposes, and has engaged capable Massachusetts attorneys to represent him here. Finally, the only public policy of Massachusetts cited by Defendant as militating against enforcement of the clause is that the parties shared unequal bargaining power. *See* Petter Decl., Docket No. 13, ¶ 17. Although the Stock Plan may technically be considered a "contract of adhesion," that fact alone does not contravene Massachusetts public policy. *See Miller v. Cotter*, 448 Mass. 671, 684 n.16, 863 N.E.2d 537 (2007). Consequently, the Court finds that the forum selection clause is enforceable as a matter of law. Because no genuine issue of material fact exists regarding the forum selection clause, summary judgment will enter in favor of Plaintiffs on Count Four. *See* Fed. R. Civ. P. 56(a).

*Personal Jurisdiction*

Plaintiff has made the requisite showing that Defendant has sufficient contacts with Massachusetts for this Court to exercise specific jurisdiction.[2] Specific jurisdiction exists "over an out-of-state defendant where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 24 (1st Cir. 2007). To determine whether the Constitution permits the exercise of specific

---

[2] EMC does not allege that Defendant has Massachusetts contacts sufficient to support general jurisdiction.

jurisdiction, the First Circuit uses a three-part inquiry.[3] First, the legal claims must relate to or arise out of the defendant's contacts in the forum. *See Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). Second, the defendant's contacts must constitute "purposeful availment of the benefits and protections" of the forum's laws. *Id.* Third, the exercise of jurisdiction must be reasonable, in light of the First Circuit's "gestalt factors." *Id.*

On multiple occasions Defendant sent his acceptance of the Stock Plan, both electronically and in hard copy, to Massachusetts. The result of Defendant's assent to the contract's terms was that he acquired equity ownership in a Massachusetts corporation headquartered in Massachusetts. Defendant also concedes that he was in Boston for the EMC Leadership Summit after having received an offer from Pure Storage, and just days before resigning from EMC Europe—conduct that Plaintiff alleges to be "detrimental activity" under the Stock Plan. These contacts are sufficient to support specific jurisdiction. First, Defendant's repeated acceptance of the RSU Agreement and travel to Boston in 2015 give rise to each of EMC's claims under the Stock Plan, thereby satisfying the relatedness prong of the minimum contacts test. Second, Defendant purposefully availed himself of this forum's laws by contracting to obtain shares of a Massachusetts corporation, and by assenting to a forum selection and choice-of-law clause that invokes the protections of Massachusetts' law and courts. This activity made it reasonably foreseeable that Defendant could be haled into this Court. *See Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir. 1983) (finding sufficient contacts to support jurisdiction where out-of-state educational institution sent application information and

---

[3] Personal jurisdiction exists over an out-of-state defendant where it is authorized by the forum state's long-arm statute and is consistent with the due process clause of the Fourteenth Amendment to the U.S. Constitution. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). Because the Massachusetts long-arm statute has been interpreted to extend to the limits allowed by the U.S. Constitution, this Court will proceed directly to the due process inquiry. *Id.*

acceptance letter to plaintiff in Massachusetts).

The exercise of jurisdiction over Defendant is also reasonable in light of the "gestalt factors."[4] While Defendant will be burdened by defending himself in this Court, that burden is not "onerous in a special, unusual, or other constitutionally significant way." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996). Massachusetts has a strong interest in providing a Massachusetts corporation with a forum to litigate claims arising from its own Stock Plan. *See Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.*, 394 F. Supp. 2d 299 (D. Mass. 2005). This is especially true where, as here, a defendant has agreed to litigate in Massachusetts courts according to Massachusetts law, and a Massachusetts plaintiff seeks a resolution in its home forum. Although the courts of the United Kingdom are capable of adjudicating this dispute, the Court sees no advantage to be had by dismissing this case in favor of the later-filed U.K. action, other than the convenience it will provide to Defendant. Defendant raises no other pertinent policy arguments that would counsel against jurisdiction in this Court. Accordingly, the Court finds that exercising jurisdiction over Defendant is reasonable.

### *Forum non conveniens and discretionary stay*

Defendant's arguments that the Court should grant a discretionary stay or dismissal on *forum non conveniens* grounds are equally unavailing. The doctrine of *forum non conveniens* allows a federal court to dismiss a claim "where an alternative forum is available in another nation that is fair to the parties and substantially more convenient for them or the courts." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1329 (1st Cir. 1992). This discretionary tool is limited, however, by "the principle that a plaintiff's choice of forum should rarely be disturbed."

---

[4] The "gestalt factors" are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994).

*Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007) (internal quotations omitted). The party seeking dismissal bears a "heavy burden" of demonstrating that (1) an alternative and adequate forum is available; and (2) convenience and judicial efficiency strongly favor litigating the claim in the second forum. *Id.* Even assuming that the United Kingdom provides an adequate and available forum, Defendant's arguments regarding convenience and judicial efficiency do not overcome the strong presumption in favor of Plaintiff's choice of its home courts.

The *forum con conveniens* analysis requires courts to balance factors relevant to the private and public interests implicated by the case.[5] *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). In light of the Stock Plan's forum selection clause, however, this Court gives no weight to Defendant's arguments about the private interests in efficiency and convenience. As the Supreme Court observed in *Atlantic Marine Construction*, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 134 S.Ct. 568, 580-82 (2013) (holding that where a forum selection clause is present, lower federal courts "should not consider arguments about the parties' private interests" when considering a defendant's motion to transfer venue, and noting that courts should evaluate *forum non conveniens* the same way). The public interest factors weigh strongly against dismissal. This dispute concerns stock in a Massachusetts corporation, granted by that corporation pursuant to a contract that invokes the protections of Massachusetts courts. Further, because Massachusetts law applies, this Court is best suited to adjudicate the dispute. Therefore,

---

[5] Private interest factors include "the relative ease of access to sources of proof; availability of . . . witnesses; . . . [and] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). Public interest factors include "the administrative difficulties of docket congestion; the general goal of having localized controversies decided at home . . . ; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." *Id.* (internal quotations omitted).

the Court will not grant dismissal under *forum non conveniens*.

Finally, the Court declines to grant a stay pending the outcome of the U.K. action. The Court gives little credence to Defendant's assertion that a stay would solve inefficiency and comity concerns, because Defendant created those problems by filing the U.K. action two weeks after EMC brought this suit. *See Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*, 361 F.3d 11, 20 (1st Cir. 2004). The Court will not abdicate its responsibility to exercise jurisdiction where it exists, thereby depriving a Massachusetts corporation of its right to have its claims adjudicated in this forum. *See Chico Service Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 29 (1st Cir. 2011); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994). Although Defendant will be inconvenienced by this litigation, fairness to EMC counsels in favor of proceeding with this first-filed action. The request for stay will be denied.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint or Stay the Action (Docket No. 11) is ***denied***.

The Court ***grants*** summary judgment in favor of Plaintiffs on Count Four. Section 13 of the EMC Corporation Amended and Restated 2003 Stock Plan is enforceable. Disputes arising out of, or relating to, the EMC Corporation Amended and Restated 2003 Stock Plan, including those at issue in this action, are subject to the exclusive jurisdiction of the federal or state courts of the Commonwealth of Massachusetts.

SO ORDERED.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**